All right, our next case is 17-1182 United States v. Glaub, Ms. Wolfe. Good morning, Your Honors. May it please the Court. My name is Laura Wolfe, and along with Siddhartha Rathod, we represent Mr. Glaub, the defendant appellant in this case. The government has taken the position in this case that the False Claims Act allows for prosecution even when there is no risk of harm whatsoever to the government, a reading that would render the False Claims Act unconstitutional. Our First Amendment jurisprudence is founded on the notion that there need be a nexus of speech to harm or to significant risk of harm in order to regulate speech. Ms. Wolfe, is it important for us to have an understanding of exactly what the viewpoint is that was being expressed? I don't believe that it's necessary to have an understanding of the viewpoint in order to decide on this question of whether there needs to be some nexus of speech to harm. However, there is also a viewpoint discrimination component to this case separate from that. Well, what if we decide that it is important for us to know what the viewpoint is? What was the grievance for which he sought redress? What was the viewpoint? There was no – I don't know if there was a grievance in particular, Your Honor. It was simply a request that the government pay a private debt. And so our position is that even an unwelcome petition or even a questionable petition is still protected under the First Amendment, including a petition asking But here's the problem I'm having. We don't know whether there's any message that is sought to be delivered or whether there is a grievance for which he sought to be relieved. And if there is no grievance and there is no message, then there's – we're not talking about the First Amendment. Isn't that so? I disagree that if there's no grievance, it's not a petition. So the case of United States Postal Service versus Hustler Magazine is a case that talks about the right of Hustler Magazine to send copies of their magazine to members of Congress as a right to petition. And those requests or those magazines were not being sent as a grievance or making any specific requests, but they were still considered petitions under the First Amendment. And the court essentially – But it was clear that the interdiction was directed at the content. I mean, it's a magazine. What was the substantial comparable of the magazine here? What was the message? Yeah, I think that the message here is that the government did not like being asked to pay a debt of a private citizen. That was a private debt. But the private debt was not being asked to be paid based on a government liability to Mr. Glaub. But that's mixing into that other issue. I'm still looking for the message here for which First Amendment protection is sought to set aside in a conviction. The message is essentially that a citizen has the right to ask the government to make financial payments or has a right to ask the government to essentially to relieve someone of their debt. And we see that, for example, Mr. Glaub has – one of his requests was to relinquish his student loan debt. And we see that every single day in this country. There are actual clinics at the Harvard Law School. They have a clinic specifically geared towards filing lawsuits for students to discharge their student loan debt. And that's precisely what Mr. Glaub did in his request. What about the car debts on the purchase of automobiles? Okay, say there's a message there about protesting about student debt. What about the vehicles? Well, I don't actually believe it needs to be a protest. This isn't about political speech. It's simply about the right to petition the government for redress, regardless of the value of the speech or the questioning, you know, whether or not this relief would have ever been granted. We have the right to make the request. And that's where the – if you want to see it as a content-based restriction, essentially what I'm saying is that the government's position is that we cannot have speech of a financial nature made to the government without some absolute right of entitlement to that financial amount before speaking, which would mean that, for example, any student who loses one of their cases where they're asking to discharge student loan debt is now liable for prosecution under the False Claims Act. Let me ask you. This isn't part of the problem with having no record on Mr. Glaub's position, the fact that the court wouldn't let him advance a First Amendment defense? Yes, Your Honor. The court would not allow Mr. Glaub to advance a First Amendment defense. We had tried to move for its dismissal in the – or, excuse me, move for a dismissal of the charges in the indictment. And I'm not sure if I fully understand the question, but essentially what had happened was Mr. Glaub was left with solely an intent-based defense in this case, and the government even took the position saying that he essentially was left with no recourse except to take the stand and to discuss his beliefs, which he chose not to do. But in order to persuade the district court that this truly is a First Amendment thing and that ought to be injected into the case, is it necessary to state what the viewpoint is or what the grievance that's presented? I think we need to state what the request is, the petition is. And in this case the request was for the government to pay a private debt, and that was the position that we took as defense counsel at trial, was that that was the request being made. However, I don't believe that Mr. Glaub would have needed to speak about his nothing false about this claim. What the trial court ultimately did is said that what is false about the claim is simply that the claim is being made while Mr. Glaub knows that the bills were his to pay. And our position is essentially that the First Amendment protects that right, to say, I know that this is my debt, but I would like the government to pay it. And as long as you're not doing so in a false manner or fraudulent manner, then you can't be convicted under the False Claims Act. Why isn't this an effort to defraud the government? Essentially it would be a clumsy effort to defraud the government. Essentially saying, dear government, I would like you to pay this debt, or thank you for paying this debt and attaching a private bill is such a clumsy effort to defraud that I don't believe we can see fraud within these claims itself. And that's the other concern in this case, Your Honor, is the fact that the court allowed the mens rea element of knowing to be collapsed into the actus reus of sending or making the request. So ultimately what they said is that by engaging in speech, Mr. Glaub was essentially trying to defraud the government. Didn't the government have to prove that he knew his submitting the car bill to the government was a false record? No, the government was not forced to put that on as evidence, Your Honor. When we addressed that in our motion, our Rule 29, essentially halftime motion with the court, the court ended up siding with the government in their position that intent could be inferred through the submission of the letter itself. And so ultimately we're at a point now that any time a person asks the government to pay a private debt, simply by asking, in this case by sending the letter, they've now engaged in fraudulent conduct, and now it's the burden is on them as the defendant to take the stand and prove their own innocence. And that's the concern with the First Amendment. And I don't know if you have more questions on the First Amendment, but I do also want to ask. Well, why would somebody submit a private debt that he's incurred to the government in the first place? Every citizen has a right to ask the government to pay their debts. For example, if a citizen's house was flooded during a hurricane and they believe that they had the right to ask FEMA for additional money, more than they were given, do we give citizens the right to ask for that money? If the citizen says, I believe my house was actually worth this much, the damage was of this much value, it was, you know, $500,000 worth of value, not $100,000, and I'd like FEMA to help me and pay that off because I can't afford it. Well, who did he send his car bill to? The United States Department of Agriculture, which I think just goes to showing it's an irrational assertion and that because the government knew there was no risk of harm, they exercised overreach by prosecuting. We have the case, for example. Well, that's a different argument than you're making. You're not making a prosecutorial selected prosecution claim here, are you? No, I'm making an unconstitutional overreach argument. And viewpoint discrimination, I should note, is separate from a prosecutorial or selective prosecution argument. However, outside of that, we know from cases like Bridges v. California, a United States Supreme Court case, that we cannot, we must look at the facts of every case to determine whether there's any clear and present danger of harm before we prosecute. And should there be a prosecution, even lawful under the statute, it cannot move forward because if there was no clear and present danger of harm, then it's constitutional overreach by the government, which is precisely what happened in this case. The government admitted three times in their briefs that there need not be a risk of harm for them to prosecute. The trial court made a finding during sentencing that there was no risk of harm. These amounts would be paid out. However, the government still prosecuted Mr. Glob solely because of his speech. And it should also be noted with the jury instruction issue, there was a significant error with the jury instruction in this case, which was that the jury, or excuse me, the trial court instructed the jury on the incorrect definition of claim, rejecting the definition adopted in the United States Supreme Court case of United States v. Cohen. But the Supreme Court's departed from that definition. You keep citing it, but there's been subsequent Supreme Court cases that have very clearly said we're taking a broader definition of claim under the False Claims Act. Is that Niefert-White, Your Honor? Yes. So Niefert-White was actually interpreting the Civil False Claims Act, whereas Cohen is interpreting the Criminal False Claims Act. Niefert-White did not reject Cohen, but instead said that it was only there to address the question of whether or not a bill, or excuse me, a loan application could also result in, a false loan application could result in criminal, or excuse me, civil penalties under the False Claims Act. It should be noted that Congress has since amended the Civil False Claims Act to define the term claim and to have other limiting definitions, such as a materiality requirement. Congress has never defined the term claim within the Criminal False Claims Act, which is what was being decided upon in United States v. Cohen. But further, it's not only the affirmative definition from Cohen that we're looking at, it's also the rejection in Cohen. They specifically, the Supreme Court specifically rejected the idea that claim could simply mean a demand for something of value. And in this case, the trial court instructed the jury that claim only meant a demand for something of value. And essentially that, the only reasons given were that the trial court thought the Supreme Court got it wrong, was the quote, and also that the context between the cases were different. And we know from Clark v. Martinez, we know from United States v. Santos, that we cannot change the meaning of a term within a statute solely based on differing contexts. If possible, Your Honors, I'd like to preserve the rest of my time for rebuttal unless there are other questions at this time. I do have a question. But if there was a problem with that claims instruction, wasn't it corrected by another instruction that included the word that had been a knowingly false claim, and I think uses the expression, against the government? That's in a later instruction, isn't it? It's in the same instruction as that claim is a claim upon or against the government. And the position of the government is that simply submitting the claim to the government is the claim upon or against, and the demand for payment is all you need to do to submit a claim upon or against. But in the jury instructions, not placed exactly where you want it to be placed, there is reference that it must be a false claim, quote, against the United States. Yes, that is the actual definition in 18 U.S.C. 287. However, claim upon or against the government is defined, that term itself is defined in Cohen as stating it must be based on the government's own liability. But I do not believe it was corrected, Your Honor. And the other way we know that this caused confusion to the jury is the jurors specifically asked a question asking for additional legal clarification between the terms claim and demand for payment. And that's in document number 103. And the court said no, that the court was simply not going to respond to that question. And the request that was made was essentially not concretely defined for the jury. The difficulties were not swept away, as we know in Bolenbach versus United States. We must sweep away those difficulties of the jury by answering their questions concretely and accurately. We know by decisions of this court in Fitzpatrick that we must fairly answer juror questions. So we know the jurors were struggling with this definition, and yet they were given no additional guidance on it. Well, except that I don't know whether the court indicated this, which they normally do, and that is just refer to the instructions. But even if it didn't, it had these instructions which were deemed a whole, and there's the expression in there, against the United States. Doesn't that take care of the problem? I don't believe it does, Your Honor, because if all we're saying is that all you need to do is make a demand against the United States, i.e., make a demand to the government in this case, then we're in a situation that any time you make a request that the government deems it has no liability for, you may be prosecuted under the False Claims Act. If I could reserve the rest of my time for that. You may. Thank you. Let's hear from the U.S. Counsel, members of the court, Jim Murphy representing the United States. Counsel has argued that her client could not be prosecuted unless there was a significant risk of harm to the United States. There are a number of things that could be said to that, but the dispositive response, I think, is that Congress wrote the statute and they did not require a risk of harm. In fact, they seemed to consider something close to it and went the other direction and said the claim need not be material and the government need not actually be deceived. Does the claim have to be false? It has to be false, fictitious, or fraudulent. Could you look at the pay to the order of the United States without recourse? Thank you for paying this debt. What is false about these letters that Mr. Glob sent? I mean, I'm not even sure there's a statement of a present fact. There's intent to deceive, Judge McHugh. Well, I asked if there had to be a false statement. Well, it can be fraudulent. But fraudulent is a higher standard. False means you know it's untrue when you submit it. But what's untrue here? Here's my car payment bill. It truly is my car payment bill. I'm sending it to you. Thank you for paying this. What is false in that? If there were nothing but that, just a ---- Well, there is nothing but that. There's a great deal more, Your Honor. I respectfully suggest. He did this repeatedly. He did it. It was actually a buyer's invoice. So if you do five non-false statements, it violates the Act? No. One non-false statement doesn't? No. But all of them had very detailed information. It wasn't just a buyer's invoice or a bill. He had detailed wire information with routing numbers, account numbers. The first claim had a false check. Do we have any reason to believe that those are false? Yes. Because it's a suggestion with detailed information of how the government can pay him, submit it to the government with intent to deceive the government into thinking it owes these debts. Well, I could send you a letter with my bank account and say thank you for depositing, you know, $500,000 in my account. Nothing about that's false. If you did it, I'd be thankful. I think the falsehood needs to be considered in light of his state of mind. Is it really intent to deceive, or is it really just a political expression saying, I don't think I should have to pay this? There is such detail here, Your Honor, that it could deceive a reasonable person. Nobody would believe the government would pay it, though. I think we're agreeing that it was unlikely, Judge Tempkowitz, that the government was going to pay these. I think we were all agreed below on that. It's completely irrational for somebody to send their car payment to the United States Department of Agriculture. I mean, that's just crazy. Maybe a tractor payment. Yeah, maybe a tractor. It might have been an implausible fraud claim, but there was such detail over and over again certifying this stuff, detailed wire information, and the first claim did have a personal check, which, I'll concede, doesn't make a great deal of sense because Mr. Glob wrote that personal check on his account. It says, pay to the order of the United States without recourse. Now, that check was no good, and there was testimony that he'd tried this before to pay off a tax debt in Douglas County, Colorado. Well, you're not claiming the check is the fraud, are you? It's part. It's part of the submission taken on the whole. You mean that he was fraudulently trying to give money to the government? You're not saying that. What I'm suggesting is that a reasonable jury could find intent to deceive here, and, in fact, they did. Well, and maybe that's where we disagree. I read this case, and I was wondering, don't you guys have enough to do? I can't imagine why you'd file felony convictions for someone who's sending things that aren't false. They're silly. They're irrational. I mean, I find this a very puzzling prosecution. Well, when the jury heard all the evidence, it found that the evidence, we don't know their exact reasoning, but there's sufficient detail here. I know I've said this before. Sufficient detail, wire transfer information, and he didn't make up these cars. He goes to the dealership. He negotiates with car salesmen. He gets a vehicle with all these accessories, and he has a buyer's order, and then he sends them certified to the government, to the Department of Finance, to the Agriculture Department, and says, thank you for paying this, $200,000. But what is false about that? He, in fact, went and got a car with all of these accessories that cost the amount that he said it cost, and if the government would be nice enough to pay it, he would be grateful. What in that is false? I mean, I think that it's surprising that the indictment wasn't dismissed. Well, I don't think it could have been. The First Amendment really wasn't at issue here, Judge. In spite of all the words that have been devoted to this issue, he was charged with making a false claim, and there was a threshold of termination that if it's a false claim, if it's a false claim, there is no First Amendment protection. And so the only thing left is is it or isn't it, and that was a jury question. Well, what I've been asking you about has to do with whether it states a claim under the False Claims Act without even getting to the First Amendment argument. If it's not false, I don't know how you can have a false claim. Well, whether the evidence shows that it was false and or fraudulent was for the jury to decide here on that. No, it's whether the indictment is sufficient is for the judge to decide, isn't it? It would be for the judge to decide at halftime at a Rule 29 motion. Is there sufficient evidence for a jury to conclude? We don't really have a 12B6 or a motion to dismiss in criminal cases. You normally can't do that. It could have been addressed at halftime. Actually, it was. They said the evidence was insufficient. The judge said, no, I don't think so. Right there, isn't that exactly what's necessary? It's a motion for acquittal because the evidence is insufficient. And following up what Judge McHugh was saying, the insufficiency is there was no evidence of an intent to defraud. There was no evidence of falsity. And they were certainly free to argue that. They did not argue it in their opening brief or reply brief. Well, but you said it was there in the motion for acquittal. Yes, it was a trial. Well, I mean, you're not saying that it was waived because they waited until the government's case was in to file the motion or to submit the motion for acquittal, are you? Judge, I am saying it's waived. They can't come into this Court and argue the insufficiency of the evidence when they don't talk about the trial evidence in their brief and they don't talk about the elements of the offense. Because that's where it comes up. Well, that's an appellate waiver. I thought you were suggesting there was a waiver below that they couldn't make a motion for acquittal. No. And so we review that de novo, right? The motion for acquittal. If it had not been waived in the opening brief, it's basically de novo review as a practical matter, insufficiency of the evidence. But it was waived in the opening brief because there was no discussion of the elements or the evidence. Well, turning to the First Amendment issue, how under United States v. Cruz, our decision from 1986, we made it pretty clear that the defendant there was entitled to tell the jury about his First Amendment defense and to explain the basis of his views and what he was doing, didn't we? I forget the factual situation in Cruz, Your Honor. It was threats against the President that he told a nurse that he was going to kill, I think, President Reagan. I'm getting confused on my Presidents. And we ruled that he was entitled to put on a defense in terms of whether it was a true threat. And you could make exactly the same argument. If it's a true threat, it's not protected by the First Amendment. But we didn't say you first try whether it's a true threat without ever telling the jury that he's claiming he was making a political statement. We said it was proper to put it all in in front of the jury. I understand, Your Honor. And when we're dealing with public figures and words directed to public figures, we do get into a difficult area. Is this really a threat or are they just saying, I really don't like you, Mr. Politician? Well, it seems to me that the interest But we're not in that area now, Judge. But the interest would be greater to protect the public figure from a true threat, right, than please pay my personal bill. It seems like if you're balancing the interest of the government against the interest of speech, the interest of government is pretty low here as opposed to where you might have a threat against the President of the United States. Judge, if any portion of these submissions contained an expression of personal political ideological belief, I think we would be closer to that territory. It's still a jury question. But we're not. There's not a single thing here that can be deemed as political protest or criticism of the government. It's just financial. All these details. Why are the money here, government? Thank you very much. I mean, somewhere creeping into these filings here was the concept of paper terrorism. I admit I don't recall that. I may well be there. Paper terrorism? Yeah. Inundating the government with a bunch of garbage so that they have to address it and waste time. I don't think. It certainly wasn't argued at trial that I can recall. I think the prosecutor pretty much stuck to the elements of the offense. Well, if Mr. Glob wanted to get up on the stand and say, I'm flooding the government with these private bills to slow them down, I don't like the government and this is my way of protest, it seems to me that would be a political First Amendment protected type of statement or conduct. But the court would not have let that in here, would he? Well, perhaps. But Mr. Glob did not take the stand. And I don't recall his counsel arguing that. Well, I think they were told they couldn't put that type of statement. I'm trying to impair and impede the government. And I don't think that's going to work with a jury.  I was just trying to impair the government. And that's because I don't like the government and don't really consider it my government. That wasn't at trial, Your Honor. It's because the trial court wouldn't let him put in any evidence of his First Amendment claim. He was told repeatedly, this isn't a First Amendment case. If you get convicted under the False Claims Act, it's therefore not speech. Therefore, your First Amendment claims are irrelevant. I think the court said that with regard to their jury instructions and some of their arguments on the First Amendment, which seemed to be urging the jury to decide a legal question. I don't recall them offering any evidence that the court rejected on the grounds that it was just his personal belief. That's not my recollection of the record. But I'll go back and check. I admit my recollection could be wrong, Your Honor. But I don't recall them offering any evidence. They certainly argued many times. Well, they wouldn't have offered it because the court repeatedly told them, even when they tried to get jury instructions in, the court repeatedly told them, you have your issue reserved for appeal. I've already decided you can't raise these issues. Well, their jury instructions, though, were leading the jury or would have led the jury away from the elements of the offense. And the trial judge properly wanted the jury to focus on those elements, not the suggestion that, which the defendant had bluntly made, that even if you satisfy the elements of the offense, you may be not guilty. That is simply a misstatement of law. And that's what they wanted to do. And it would have been misleading, Your Honor. One of the instructions Mr. Murphy had said, quote, it is the theory of the defense that Gunther Glob's political associations and beliefs have colored the perceptions of this actions, of his actions. What does that mean? Well, they've argued that in the brief that the government was targeting him. I think that's a response. And this is in part, this and another instruction that the jury is not to consider his political beliefs incorporated a significant portion of what he wanted in these instructions. Not everything. Right. But I believe that's a response. It seems like that's where they're going. I'm trying to untangle that instruction, and it doesn't make any sense to me. It was an instruction, I assume, was submitted by the defendant. Right. I don't recall where this language came from, but I believe the trial court was trying to reflect what was, in fact, his theory of defense. That was his vindictive prosecution. He's being targeted. Right. And that's what it's saying here. But in the grand jury proceedings, it was discussed that his submission of the bills was because of the program or the promotional materials from a group that believes that the U.S. Treasury holds a separate account for each citizen, and that you're entitled to draw upon that account. Right. I recall the FBI agent in the grand jury transcript said that some sovereign citizens apparently hold that belief. Okay. So it is a political belief held by Mr. Glob, a viewpoint. Well, the government didn't argue that at trial, although I think defense counsel tried to elicit some information at trial from the agent on that subject. But I don't think a reasonable jury could conclude that every American has a secret account and you can send $200,000 in bills with wire transfer information. Again, it's a jury question, Your Honor. I don't think the jury could reasonably view that as a political belief. Well, I don't understand how the jury can decide the question if you don't let the defendant put in evidence of their position with respect to their constitutional right to speak. Again, Judge, I know I've said this, but I'm not aware that they offered any evidence itself. They argued over and over and over again that this was political expression, that he had a right to do these things, and it wasn't a claim, and he really didn't intend to defraud the government. They said that over and over again. In terms of argument, you're absolutely right, Judge. I don't recall they didn't call any witnesses, to the best of my knowledge, and so there really wasn't any evidence itself for the court to consider other than the arguments of counsel, which, of course, are not evidence. Thank you, counsel. Thank you, Your Honors. Your Honors, just to address some of the points you raised earlier, first, the government admitted that there was no false information contained in the claims. That can be found or, excuse me, in the letters Mr. Glaub sent. That can be found in Volume 5, docket number 61 on page 32. In addition to that In what context did they make that admission? It was an evidentiary hearing, where that information was requested through a colloquy between Mr. Rathod and the FBI agent who was tasked with investigating this case. And I should also note, for purposes of preservation, this issue was raised on appeal. It's on page 50 of our opening brief, with respect to the fact that the trial court impermissibly collapsed the element of falsity into the fact that the claim was simply Mr. Glaub's to pay, and that did not render the claim itself false. And lastly, I know, Your Honor, you were asking questions about whether or not there could have been any sort of clogging up of the system. Another question that was asked of Agent Zappi was whether there was any harassment or any harassing nature about these bills or, you know, anything else that could have shown any sort of danger to the government. And Agent Zappi testified that they were not harassing. That's in Volume 5, docket number 61, pages 10 to 11, and that simply these were odd letters that were not part of the normal correspondence of the USDA's office. So there was no evidence that there was any clogging up of the government. But I will just add briefly, Your Honors, that the case of Bolger from the United States Supreme Court states that the trajectory between mailbox to trash can is not too high of a burden for the Constitution. The jury instruction I read to Mr. Murphy, why doesn't that adequately capture Mr. Glaub's First Amendment protected speech theory of the case? The theory was not only viewpoint discrimination. There were multiple theories essentially happening at once, which was, one, once the government admitted that they would not have prosecuted these acts as crimes if students had engaged in them and wouldn't have even seen them as criminal, that's where the viewpoint discrimination element came in. However, regardless of Mr. Glaub's political associations, he had every right to submit these claims or these letters to the government, asking the government to pay a debt, whether he's a sovereign citizen, and that's the basis for why he did it, or whether he's just an individual who's down on his luck and would like it to be paid. And so our First Amendment defense was essentially, regardless of political association, the right to speak and the right to petition. Thank you. Thank you, Your Honors. Appreciate the arguments. Counsel are excused, and the case shall be submitted. The Court will take a short recess.